E-FILED
Monday, 08 May, 2023  10:29:00 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| v. | ) | Case No. 2:14-cr-20075-SLD |
| | ) | |
| WALLACE PUGH, | ) | |
| | ) | |
| Defendant-Petitioner. | ) | |

ORDER

Before the Court are Defendant-Petitioner Wallace Pugh's *pro se* Motion Under 28

U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Pro Se

2255 Motion"), ECF No. 26, counseled Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255

("Counseled 2255 Motion"), ECF No. 30, and counseled motion for a status conference, ECF

No. 34.  For the reasons that follow, the Counseled 2255 Motion is DENIED, and the remaining

motions are MOOT.

**BACKGROUND**

In December 2014, a grand jury indicted Pugh on one count of possessing 28 or more

grams of a mixture and substance containing cocaine base with intent to distribute in violation of

21 U.S.C. § 841(a)(1) and (b)(1)(B).  Indictment, ECF No. 1.  Assistant Federal Public Defender

Elisabeth Pollock was appointed to represent him.  *See* Dec. 9, 2014 Min. Entry.

On April 8, 2015, the Government filed a notice pursuant to 21 U.S.C. § 851 indicating

that it intended to rely on two of Pugh's prior convictions to subject him to a sentencing

enhancement.  Not. Prior Convictions, ECF No. 10.  On April 29, 2015, Pugh entered a plea of

guilty pursuant to a written plea agreement.  Apr. 29, 2015 Min. Entry; Plea Agreement, ECF

No. 11.  As part of the plea agreement, he waived his rights to appeal and to file a collateral

1

attack on his sentence or conviction except for claims of ineffective assistance of counsel. Plea

Agreement ¶¶ 24–26. Pugh's plea was accepted on May 19, 2015. Order Approving Magistrate

Judge Recommendation, ECF No. 16.

The United States Probation Office prepared a presentence investigation report ("PSR")

in advance of sentencing. PSR, ECF No. 18. USPO indicated that Pugh was a career offender,

*id.* ¶ 21, and listed his total offense level as 34 after acceptance of responsibility, *id.* ¶¶ 22–24.

With a criminal history category of VI, *id.* ¶ 45, his Sentencing Guidelines range for

imprisonment was 262 to 327 months, *id.* ¶ 77. He was subject to a ten-year mandatory

minimum under 21 U.S.C. § 841(b)(1)(B) due to his prior felony convictions. *Id.* ¶ 76. He was

subject to a mandatory minimum eight-year term of supervised release. *Id.* ¶ 79. Pugh did not

object to the PSR. *Id.* at 22.

United States District Judge Colin Bruce, who was then presiding over the case,

sentenced Pugh to 204 months of imprisonment based in part on the Government's motion under

§ 5K1.1 of the Sentencing Guidelines. *See* Sept. 14, 2015 Min. Entry; Statement of Reasons 2,

ECF No. 24. Pugh did not appeal.

In May 2020, Pugh filed the Pro Se 2255 Motion, in which he argued that Judge Bruce

violated 28 U.S.C. § 455 by failing to recuse from his case and that Judge Bruce presiding over

his case violated his due process rights. Pro Se 2255 Mot. 5–6. These claims are based on *ex*

*parte* communications between Judge Bruce and the United States Attorney's Office for the

Central District of Illinois ("USAO") that came to light in 2018. *See United States v. Atwood*,

941 F.3d 883, 884–85 (7th Cir. 2019) (providing a brief explanation of the discovery and

disclosure of the communications). Judge Bruce recused himself from hearing Pugh's motion,

and the case was reassigned to this Court. May 6, 2020 Text Order of Recusal.

2

The Court appointed counsel to represent Pugh with respect to the Pro Se 2255 Motion. May 6, 2020 Text Order. On October 1, 2020, counsel filed the Counseled 2255 Motion, mooting the Pro Se 2255 Motion. *See* Counseled 2255 Mot. 1.[1] Counsel reasserted the claims made in the Pro Se 2255 Motion, *see id.* at 1–2, 12–13, and added a claim that the Federal Public Defender's office ("FPD") provided Pugh with ineffective assistance of counsel by failing to include claims based on Judge Bruce's *ex parte* communications in Pugh's appeal and by failing to obtain agreements with the Government to toll the time for Pugh to bring his claims, *id.* at 23–24.

The Government filed its response on February 1, 2021. Resp., ECF No. 33. It argues that Pugh cannot show that Judge Bruce was actually biased against him, that Pugh's "nonconstitutional appearance of bias claim is not a proper basis for relief in a § 2255 proceedings," that Pugh's "allegations should be dismissed because he waived his right to collaterally attack his sentence and conviction as part of his plea agreement," that Pugh procedurally defaulted his § 455(a) claim, that the § 455(a) claim is untimely, that the ineffective assistance of counsel claims are meritless, and that the "Court must examine its own jurisdiction to determine if [Pugh] can even proceed on the present motion without approval from the Seventh Circuit." *Id.* at 25–26.

No reply was filed, though Pugh later filed a motion for a status conference.

---

[1] Though the Counseled 2255 Motion states that it "is intended to supplement" the Pro Se 2255 Motion, Counseled 2255 Mot. 1, it reasserts both claims raised in the Pro Se 2255 Motion, *see id.* at 1–2, so the Court finds the Pro Se 2255 Motion moot.

**DISCUSSION**

I.      **Legal Standard**

A prisoner in federal custody may move the court that imposed his sentence to vacate, set

aside, or correct it.  28 U.S.C. § 2255(a).  "[R]elief under § 2255 is an extraordinary remedy

because it asks the district court essentially to reopen the criminal process to a person who

already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521

(7th Cir. 2007).  Accordingly, such relief "is available only when the 'sentence was imposed in

violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the

sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral

attack." *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C.

§ 2255(a)).

II.     **Analysis**

The Court first addresses the Government's jurisdiction and waiver arguments as those

apply to more than one of Pugh's claims and then addresses each of Pugh's claims and any

defenses specific to those claims separately.

**A.  Jurisdiction**

"A second or successive motion must be certified as provided in section 2244 by a panel

of the appropriate court of appeals to contain" either

> (1) newly discovered evidence that, if proven and viewed in light of the evidence
> as a whole, would be sufficient to establish by clear and convincing evidence that
> no reasonable factfinder would have found the movant guilty of the offense; or (2)
> a new rule of constitutional law, made retroactive to cases on collateral review by
> the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h).  A district court lacks jurisdiction to consider a successive § 2255 motion

unless the petitioner first obtains authorization from the court of appeals to file the motion.  *See*

*Burton v. Stewart*, 549 U.S. 147, 152 (2007); *Phillips v. United States*, 668 F.3d 433, 436 (7th Cir. 2012).

Pugh filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 in 2017[2] arguing that he should not have been considered a career offender.  *See* Pet. Writ Habeas Corpus 8 (Doc. 1).  Judge Joe Billy McDade denied Pugh's motion.  Apr. 25, 2017 Order 1 (Doc. 10).  Judge McDade determined that the petition was barred by the collateral review waiver in Pugh's plea agreement, *id.* at 5, and alternatively that Pugh could not "utilize § 2241 as an end run around § 2255," *id.* at 6.  He also held that Pugh's claim failed on the merits.  *Id.* at 7–8.

Courts sometimes treat motions filed by prisoners as motions under § 2255 even if they are not labeled as motions under § 2255.  *See Castro v. United States*, 540 U.S. 375, 377 (2003).  For example, the Seventh Circuit has explained that "a postconviction motion that is functionally, substantively, a motion under section 2255 (the federal prisoner's habeas corpus substitute) should be treated as such, even if labeled differently."  *Henderson v. United States*, 264 F.3d 709, 710 (7th Cir. 2001).  But the Supreme Court has held that a

> court cannot . . . recharacterize a *pro se* litigant's motion as the litigant's first § 2255 motion *unless* the court informs the litigant of its intent to recharacterize, warns the litigant that the recharacterization will subject subsequent § 2255 motions to the law's "second or successive" restrictions, and provides the litigant with an opportunity to withdraw, or to amend, the filing.

*Castro*, 540 U.S. at 377.  "Where these things are not done, a recharacterized motion will not count as a § 2255 motion for purposes of applying § 2255's 'second or successive' provision."  *Id.*

The Government argues that Pugh's petition may have qualified as a § 2255 motion, Resp. 28, but that "[i]t is unclear from the record if [Pugh] received [the required] admonition,"

---

[2] Citations to documents from this case, *Pugh v. Krueger*, No. 1:17-cv-01006-JBM (C.D. Ill.), take the form: Document Title (Doc. __).

*id.* at 28–29.  It also argues that it "would be an abuse of the system, and subvert the purpose" of requiring a warning "to treat this as anything other than a subsequent or successive § 2255 under the circumstances."  *Id.* at 29.

Nothing in the docket of the § 2241 petition indicates that Judge McDade recharacterized the petition as a § 2255 motion or gave Pugh the required warning and an opportunity to withdraw or amend the petition.  It is true that Judge McDade found that Pugh could not bring a motion under § 2241 because the remedy under § 2255 was not "inadequate or ineffective to test the legality of his detention."  Apr. 25, 2017 Order 3, 5–6 (quoting 28 U.S.C. § 2255(e)).  But he did not recharacterize the petition as a § 2255 motion; instead, he denied the petition as barred by the collateral review waiver and by § 2255(e) and also addressed the claim on its merits.  *Id.* at 5–8.  If a motion that *is* recharacterized as a § 2255 motion but without the proper warnings cannot count as a § 2255 motion for purposes of the second or successive rule, then a motion for which the warnings were never given and that was never recharacterized cannot either.  The Government's policy-based arguments do not persuade the Court otherwise. The Court has jurisdiction to consider Pugh's motion.

### B.  Plea Waiver

Pugh's plea agreement contains a waiver of the right to collaterally attack his conviction and sentence with limited exceptions.  *See* Plea Agreement ¶¶ 25–26.  The Government argues that Pugh's due process and § 455(a) claims "are squarely within the scope of the broad collateral attack waiver" and that Pugh "does not assert any recognized exception to the enforcement of the waiver."  Resp. 49.

6

"It is well-settled that waivers of direct and collateral review in plea agreements are generally enforceable." *Hurlow v. United States*, 726 F.3d 958, 964 (7th Cir. 2013).[3]  If a collateral review waiver is voluntary and knowing, it is generally enforceable. *Dowell v. United States*, 694 F.3d 898, 902 (7th Cir. 2012).  "There are only limited instances when [the court] will not enforce a knowing and voluntary waiver of . . . collateral review." *Id.*  Waivers are unenforceable, for example, if "the district court relied on a constitutionally impermissible factor (such as race)" in determining the sentence or "the sentence exceeded the statutory maximum." *Keller v. United States*, 657 F.3d 675, 681 (7th Cir. 2011) (quotation marks omitted).  Waivers are also unenforceable "against claims that counsel was ineffective in the negotiation of the plea agreement." *Hurlow*, 726 F.3d at 964.  There are also "at least some due process exceptions to a waiver." *United States v. Adkins*, 743 F.3d 176, 192 (7th Cir. 2014).  For example, a waiver "will not prevent a defendant from challenging . . . deprivation of some minimum of civilized procedure (such as if the parties stipulated to trial by twelve orangutans)." *Id.* (quotation marks omitted).

As Pugh failed to mention his waiver in either of his motions and did not file a reply, he has not argued that the waiver was not entered into voluntarily and knowingly.  In any case, the record demonstrates that it was.  Pugh signed the plea agreement, Plea Agreement 18, and represented that the collateral review waiver was entered into voluntarily and knowingly, *see id.* ¶ 27 (acknowledging that he was "waiving [his rights to appeal and collaterally attack his sentence] because he *personally* believe[d] it [wa]s in his best interest to do so in order to obtain the benefit of the concessions made by the United States in this agreement"); *id.* (stating that he

---

[3] The Seventh Circuit analyzes waivers of the right to appeal and to bring a collateral attack similarly. *See, e.g.*, *Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999) ("Our reasons for upholding the voluntariness requirement in the context of waivers of direct appeal rights apply with equal force to the right to bring a collateral attack pursuant to § 2255.").

was not "coerced, threatened, intimidated, or in any other way involuntarily persuaded to waive

his rights to appeal or collaterally attack his sentence"); *id.* ¶ 35 (stating that he had "read th[e]

entire Plea Agreement carefully and . . . discussed it with fully with [his] attorney" and that he

fully understood and accepted the agreement "without reservation, including the paragraphs

labeled 'Waiver of Right to Appeal' and 'Waiver of Right to Collateral Attack'").

And, again, as Pugh has not addressed the waiver, he has not identified any other reason

for the Court not to enforce it.  The Court finds no exception recognized by the Seventh Circuit

applies.  There is no allegation that the sentence was based on a constitutionally prohibited factor

like race or gender or that the sentence exceeds the statutory maximum.  *See Adkins*, 743 F.3d at

192.  And in the absence of any argument from Pugh that there is a due process exception for a

claim that a judge was actually biased against a defendant, *see Williams v. Pennsylvania*, 579

U.S. 1, 8 (2016) ("Due process guarantees an absence of actual bias on the part of a judge . . . ."

(quotation marks omitted)), the Court is not inclined to find one exists.  Indeed, other courts have

enforced waivers against judicial bias claims.  *See United States v. Carver*, 349 F. App'x 290,

292–94 (10th Cir. 2009); *Anderson v. United States*, No. CV 12-1025 MCA/WPL & CR 10-0086

MCA, 2013 WL 12164686, at *5–6 (D.N.M. Mar. 7, 2013), adopted by 2015 WL 12859352, at

*3–4 (D.N.M. Aug. 17, 2015).

Accordingly, the Court finds that Pugh's statutory § 455(a) claim and his due process

bias claim are barred by his collateral review waiver.  Nevertheless, as explained below, the

Court would deny those claims even if there were no collateral review waiver.

### C. Due Process and § 455(a) Claims

Both the due process and § 455(a) claims are based on *ex parte* communications between

Judge Bruce and the USAO that became public in August 2018, almost three years after Pugh

8

was sentenced.  These communications have been detailed and summarized elsewhere.  *See*

*Shannon v. United States*, 39 F.4th 868, 876, 883 (7th Cir. 2022) (citing *In re Complaints*

*Against District Judge Colin S. Bruce*, Nos. 07-18-90053 & 07-18-90067 (7th Cir. Jud. Council

May 14, 2019), http://www.ca7.uscourts.gov/judicial-conduct/judicial-conduct_2018/07_18-

90053_and_07-18-90067.pdf).  Pugh argues that these communications demonstrate that Judge

Bruce was actually biased against him, violating his due process rights, and, alternatively, that

they demonstrate an appearance of bias that required Judge Bruce to recuse himself under 28

U.S.C. § 455(a).  *See* Counseled 2255 Mot. 12–13.

### 1.  Due Process

"Due process requires 'a fair trial in a fair tribunal, before a judge with no actual bias

against the defendant or interest in the outcome of his particular case.'"  *Shannon*, 39 F.4th at

883 (quoting *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997)).  A due process claim can be

proved by evidence of the judge's actual bias or by showing that "the probability of actual bias

on the part of the judge or decisionmaker is too high to be constitutionally tolerable."  *Id.*

(quoting *Rippo v. Baker*, 580 U.S. 285, 287 (2017)).

The Seventh Circuit has decided a few cases involving due process bias claims based on

Judge Bruce's *ex parte* communications which are instructive here.  In *United States v. Williams*,

949 F.3d 1056, 1061–63 (7th Cir. 2020), the court held that Judge Bruce presiding over a

defendant's trial did not violate the defendant's due process rights where the defendant relied

primarily on the *ex parte* communications but the communications did not concern the

defendant's case.  It noted that the Special Committee appointed by the Judicial Council of the

Seventh Circuit to review complaints against Judge Bruce related to the communications "found

no evidence and received no allegation that Judge Bruce's conduct or ex parte communications

impacted any of his rulings or advantaged either party." *Id.* at 1061–62 (quotation marks omitted). Moreover, the court noted that though the communications exposed a preexisting relationship with members of the USAO, such a relationship "alone does not create a due process violation." *Id.* at 1062. It found that the defendant had "presented no evidence to rebut th[e] presumption" that "judges rise above . . . potential biasing influences." *Id.* (quotation marks omitted). Pugh relies on the same communications that were relied on in *Williams* and considered by the Special Committee, and he points to no emails that concern his case specifically or any evidence showing that the communications impacted his case. *See* Counseled 2255 Mot. 4–15.

In *Shannon*, the Seventh Circuit found that Judge Bruce's participation in a defendant's sentencing hearing, as opposed to only his trial, may warrant a different result under the due process clause because judges have considerable discretion at sentencing. *Shannon*, 39 F.4th at 884–86. In that case, Judge Bruce made comments at sentencing that the court concluded could have been interpreted as a warning that if the defendant appealed, he would impose a harsher sentence. *Id.* at 886–87. Though it ultimately declined to rule on whether there was a due process violation, the Seventh Circuit appeared to be troubled by the combination of the *ex parte* communications and the comments. *See id.* at 884 (declining to resolve the constitutional issue and instead remanding for resentencing under the court's supervisory authority). Pugh points to no similar comment at sentencing that would lend itself to a finding that Judge Bruce was biased against him. Instead, he is relying on the *ex parte* communications alone. *See* Counseled 2255 Mot. 14–15. The Court thus finds that Pugh has failed to show either actual bias or a risk of bias so high that it violates due process. The due process claim is denied.

### 2. Section 455(a)

Under 28 U.S.C. § 455(a), a judge "shall disqualify himself in any proceeding in which

his impartiality might reasonably be questioned."  The Government does not explicitly address

whether Judge Bruce's impartiality might reasonably have been questioned and, thus, whether he

should have recused himself from Pugh's case under § 455(a).[4]  Instead, it argues that this

statutory claim is procedurally defaulted, untimely, and not cognizable on § 2255 review.  Resp.

45–47, 50–57.  The Court addresses each of these arguments.

### a. Procedural Default

"A claim cannot be raised for the first time in a § 2255 motion *if it could have been* raised at

trial or on direct appeal." *McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016) (emphasis

added).  The Government argues that Pugh procedurally defaulted his § 455(a) appearance of bias

claim by failing to raise it on appeal.  Resp. 50.  Anticipating an argument that "the *ex parte* emails

had not been revealed at the time, and therefore [Pugh] could not have raised such a claim in an

appeal," the Government argues that "the emails had nothing to do with [Pugh's] case (and [some of

them] had not even been sent yet), and [Pugh] cannot excuse his own procedural failure by belatedly

asserting misconduct in unrelated cases to bolster a claim he chose not to make." *Id.* at 51.  But the

Government provides no case law support for its argument that Pugh cannot rely on these

communications, which became public after his time to appeal passed, to excuse his default.  Instead,

it appears to be making an argument that the communications do not support Pugh's claim. But that

is better considered as an argument on the merits. The Court does not find that Pugh procedurally

defaulted this claim.

---

[4] To the Court's knowledge, the Government has conceded an appearance of impropriety—and thus a violation of § 455(a)—in every case involving Judge Bruce's communications that has been decided by the Seventh Circuit so far. *See, e.g.*, *Atwood*, 941 F.3d at 885; *Williams*, 949 F.3d at 1063; *United States v. Orr*, 969 F.3d 732, 738 (7th Cir. 2020).

### b. Timeliness

Pursuant to the Antiterrorism and Effective Death Penalty Act, a federal prisoner seeking

to vacate his sentence under § 2255 has one year to do so, from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by
governmental action in violation of the Constitution or laws of the United States
is removed, if the movant was prevented from making a motion by such
governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme
Court, if that right has been newly recognized by the Supreme Court and made
retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could
have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Pugh acknowledges that his Pro Se 2255 Motion was filed outside the one-year statute of

limitations provided by 28 U.S.C. § 2255(f)(1) but argues that he is entitled to equitable tolling

of the statute of limitations because Federal Public Defender Thomas Patton made a legal error

and failed to preserve Pugh's right to raise a claim based on Judge Bruce's failure to recuse from

his case. Counseled 2255 Mot. 3.[5] The Government responds that Pugh is not entitled to

---

[5] The Court cannot ascertain whether Pugh contends his motion is timely under § 2255(f)(2), (3), or (4). He states
that there are "a few exceptions to the on[e]-year period of limitations in cases where there was an impediment from
making a motion," citing to § 2255(f)(2), (3), and (4). Counseled 2255 Mot. 3. But he makes no argument that any
of these provisions apply. Instead, he goes on to argue for equitable tolling, *id.*, which is a common law doctrine
distinct from the statutory provisions, *cf. Estremera v. United States*, 724 F.3d 773, 777 (7th Cir. 2013)
(distinguishing between common law equitable tolling and § 2255(f)(2)). In any case, the Court finds that Pugh's
motion is not timely under § 2255(f)(2), (3), or (4). Because Pugh does not allege that any government action
created an impediment to filing a § 2255 motion, § 2255(f)(2) does not apply. And because Pugh does not rely on a
new right recognized by the Supreme Court, § 2255(f)(3) does not apply. The Government argues that even if
§ 2255(f)(4) applies, the Pro Se 2255 Motion was filed outside the statute of limitations because it was filed more
than a year after Pugh could have learned of Judge Bruce's improper communications. Resp. 53. The Court agrees,
though it declines to find on the record before it that Pugh should have been aware of the communications in August
2018 when they became public or in October 2018 when a motion for a new trial was filed in a different case, as the
Government argues, *see id.* The Government provided a letter from Pugh to his attorney dated March 25, 2019
which references Judge Bruce's communications and requests that she file a motion on his behalf arguing that Judge
Bruce was biased. *See* Pugh Letter, Resp. Ex. B, ECF No. 33-2 at 5. This demonstrates that Pugh was aware of

equitable tolling because there is "no evidence showing that he exercised diligence in preserving

the appearance of bias claim."  Resp. 56.

The time limits set forth in § 2255(f) are subject to equitable tolling.  *See Holland v.*

*Florida*, 560 U.S. 631, 649 (2010) (holding that the statute of limitations for § 2254 motions are

subject to equitable tolling); *Lombardo v. United States*, 860 F.3d 547, 551–52 (7th Cir. 2017)

(applying the equitable tolling doctrine to a motion under § 2255).  A petitioner is entitled to

equitable tolling if he can show: "(1) that he has been pursuing his rights diligently, and (2) that

some extraordinary circumstance stood in his way and prevented timely filing."  *Holland*, 560

U.S. at 649 (quotation marks omitted).  "[T]he threshold necessary to trigger equitable tolling is

very high, lest the exceptions swallow the rule."  *United States v. Marcello*, 212 F.3d 1005, 1010

(7th Cir. 2000).  "A petitioner bears the burden of establishing both elements of the *Holland* test;

failure to show either element will disqualify him from eligibility for tolling."  *Mayberry v.*

*Dittmann*, 904 F.3d 525, 529–30 (7th Cir. 2018).

Here, Pugh barely develops an argument that he has met both elements of the *Holland*

test.  He cites *Holland* for the proposition that "[a]n attorney's unprofessional conduct can be so

egregious as to create an extraordinary circumstance warranting equitable tolling" but then

merely states that Patton told him he made a legal error and failed to preserve his right to bring a

claim based on Judge Bruce's failure to recuse.  *See* Counseled 2255 Mot. 3 (quotation marks

omitted).  Pugh does not acknowledge that in *Holland*, the Supreme Court held that "a garden

variety claim of excusable neglect . . . does not warrant equitable tolling," *Holland*, 560 U.S. at

651–52 (quotation marks and citations omitted), or that the facts of *Holland* are quite

distinguishable from the facts of his case.  In *Holland*, the Supreme Court found that the

_____

Judge Bruce's communications at least as of that date.  His Pro Se 2255 Motion was not filed until May 2020, which
was more than a year later.

attorney's conduct "may well" have warranted equitable tolling because the facts showed that it

went beyond simple negligence: the attorney did not file the petitioner's § 2254 petition on time

despite the petitioner sending "many letters that repeatedly emphasized the importance of his

doing so"; he did not research the applicable filing date; he did not inform the petitioner that the

Florida Supreme Court had decided his case despite the petitioner's "many pleas for that

information"; and the attorney "failed to communicate with his client over a period of years,

despite various pleas from [the petitioner] that [the attorney] respond to his letters." *Id.* at 652.

The Court remanded for further consideration because "no lower court ha[d] yet considered in

detail the facts of th[e] case to determine whether they indeed constitute extraordinary

circumstances sufficient to warrant equitable relief." *Id.* at 653–54.  Pugh points to no facts—

and cites no further cases—to support his argument that Patton's legal mistake would go beyond

mere negligence and support a finding of extraordinary circumstances warranting equitable

tolling.  *See Ademiju v. United States*, 999 F.3d 474, 477 (7th Cir. 2021) ("[I]ncorrect legal

advice generally does not by itself trigger equitable tolling.").  Moreover, Pugh merely states in a

conclusory fashion that he "diligently filed his pro se filing upon learning of the mistake."

Counseled 2255 Mot. 3.  But "mere conclusory allegations of diligence are insufficient."

*Mayberry*, 904 F.3d at 531.

The Court concludes that Pugh has failed to establish his entitlement to equitable tolling,

so it finds his § 455(a) claim untimely.

### c.  Cognizability

Even if Pugh's § 455(a) claim were not barred by his collateral review waiver and were

not untimely, it would not warrant relief.  Section 2255 "was intended to afford federal prisoners

a remedy identical in scope to federal habeas corpus." *Davis v. United States*, 417 U.S. 333, 343

14

(1974).  Although the language of § 2255 suggests that a prisoner can obtain relief if his sentence was imposed in violation of the "laws of the United States," § 2225(a), not "every asserted error of [nonconstitutional] law can be raised on a § 2255 motion."  *Davis*, 417 U.S. at 346.  The "appropriate inquiry [i]s whether the claimed error of law was a fundamental defect which inherently results in a complete miscarriage of justice, and whether it presents exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Id.* (quotation marks and alterations omitted); *see also Reed v. Farley*, 512 U.S. 339, 348 (1994) (noting the standard as whether the federal law violation qualifies as "a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure" (alteration in original) (quotation marks omitted)).[6]

Two circuit courts have addressed whether a § 455(a) claim is cognizable on a § 2255 motion.[7]  In *United States v. Couch*, 896 F.2d 78, 81 (5th Cir. 1990), the Fifth Circuit found the relevant inquiry to be "whether there was an appearance of impropriety which rose to the level of a fundamental defect resulting in a complete miscarriage of justice." *Id.* (quotation marks omitted).  It held that "[a]bsent that level of severity, the claim of an appearance of impropriety is not cognizable under 28 U.S.C. § 2255." *Id.*  It noted that "section 455 and the Due Process Clause are not coterminous" and that "conduct violative of section 455 may not constitute a due process deficiency." *Id.*  And it appeared to hold that a § 455(a) claim is only cognizable where

---

[6] Although *Reed* involved a motion under 28 U.S.C. § 2254, *Reed*, 512 U.S. at 347, the Supreme Court held that the same standard that applies to determining whether a nonconstitutional federal law violation is cognizable on § 2255 review applies to § 2254 cases, *id.* at 353–54.

[7] In an unpublished opinion, the Tenth Circuit addressed a § 455 bias claim on § 2255 review because the petitioner "assert[ed] that he was unaware of the facts allegedly warranting recusal when direct review was available." *United States v. Austin*, 48 F.3d 1233, at *1 & n.2 (10th Cir. 1995) (table opinion) (citing *Hardy v. United States*, 878 F.2d 94, 97 (2d Cir. 1989)).  But as this case is unpublished and does not analyze this issue specifically, it is not persuasive, and the Court will not address it here.

the § 455(a) violation falls "within [a] protected constitutional dimension" where § 455 and the

Due Process Clause overlap.  *Id.* at 82, 83.[8]

In *Hardy v. United States*, 878 F.2d 94, 97 (2d Cir. 1989), the Second Circuit assumed

without deciding "that as a general matter collateral attack upon a criminal sentence may be

available under section 2255 to pursue a claim of appearance of impartiality."  It made this

assumption based on the Supreme Court's decision in *Liljeberg v. Health Services Acquisition*

*Corp.*, 486 U.S. 847 (1988).  *Liljeberg* involved a motion under Federal Rule of Civil Procedure

60(b)(6) to vacate a civil judgment on the basis that the judge should have recused himself under

§ 455(a).  *Liljeberg*, 486 U.S. at 858, 863.  Rule 60(b)(6) allows district courts to grant relief

from a final civil judgment in "extraordinary circumstances."  *Id.* at 863–64 (quotation marks

omitted).  The Supreme Court held that

> in determining whether a judgment should be vacated for a violation of § 455(a),
> it is appropriate to consider the risk of injustice to the parties in the particular
> case, the risk that the denial of relief will produce injustice in other cases, and the
> risk of undermining the public's confidence in the judicial process.

*Id.* at 864.  The Second Circuit in *Hardy* noted initially that it "doubt[ed] that an *appearance* of

impropriety under section 455(a), without more, [would] constitute[] the type of 'fundamental

defect' that would justify vacating an otherwise lawful sentence under section 2255."  *Hardy*,

878 F.2d at 97.  It reasoned that, after *Liljeberg*, it was "not certain" whether the Court would

similarly hold that a criminal judgment may be collaterally attacked based on an appearance of

---

[8] The Fifth Circuit's precise holding as it relates to the facts of the case is not clear.  The district judge considering the defendant's § 2255 motion had resentenced the defendant "to comply with the spirit and beyond of *Liljeberg* [*v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988)]."  *Couch*, 896 F.2d at 80 (quotation marks omitted).  The Fifth Circuit found that the alleged § 455(a) violation did not fall within protected constitutional dimensions warranting § 2255 relief.  *Id.* at 82, 83 ("We conclude and hold that Couch's claims of an appearance of impropriety do not rise to the level of a fundamental defect in due process cognizable under 28 U.S.C. § 2255.").  It noted that by resentencing the defendant, the district judge had accorded him "a measure of process well beyond that due on the facts of his case," but that it was "within [the judge's] power to do so."  *Id.* at 82.  The Fifth Circuit does not make explicit what gave the judge the power to resentence the defendant but seemed to hold that it was not required or warranted under § 2255.

16

impropriety but concluded that "the analogy [wa]s sufficiently close to warrant" the assumption

that it would "for purposes of [that] appeal." *Id.*  The only dispositive holding from the Second

Circuit in *Hardy*, however, was that the defendant could not obtain relief under section 2255

because she was aware of the basis for the judge's recusal when direct appeal was available.  *Id.*

at 98.

Like in *Couch*, the Court finds that a § 455(a) claim could be cognizable on § 2255

review, but only if it meets the standard laid out in *Davis*.  Under that standard, the alleged

§ 455(a) error must be "a fundamental defect which inherently results in a complete miscarriage

of justice" and "present[] exceptional circumstances where the need for the remedy afforded by

the writ of habeas corpus is apparent." *Davis*, 417 U.S. at 346 (quotation marks omitted).  Here,

the alleged error does not rise to that level.  As noted above, Pugh has not established a due

process violation and has no evidence that any of Judge Bruce's communications or relationships

with the USAO impacted his proceedings or prejudiced him. *Cf. Bachner v. United States*, 517

F.2d 589, 597 (7th Cir. 1975) ("The remote and theoretical possibility that a complete

miscarriage of justice might have occurred is not enough to satisfy the Davis test, when in fact no

injustice has been done."); *Reed*, 512 U.S. at 350–52 (finding a state court's failure to comply

with the Interstate Agreement on Detainers was not cognizable on § 2254 review where the

defendant did not object and no prejudice resulted because the case "lack[ed] aggravating

circumstances rendering the need for the remedy afforded by the writ of *habeas corpus* . . .

apparent" (second alteration in original) (quotation marks omitted))).  And any violation of

§ 455(a) would have no bearing on Pugh's guilt or innocence. *See Hussong v. Warden*, 623 F.2d

1185, 1185, 1191 (7th Cir. 1980) (finding that a § 2254 "petitioner's incarceration in violation of

section 2515 of the federal wiretap statute d[id] not meet the required 'complete miscarriage of

17

justice' standard required of nonconstitutional violations of federal law in order to be cognizable

under the federal habeas corpus statute," noting in part that "the issues he ask[ed] [the court] to

redetermine h[ad] no bearing on the basic justice of his incarceration" and that nothing in the

record indicated he was not guilty (quotation marks omitted)).  Moreover, Pugh was sentenced

below his Guidelines range.

The Court does not find that *Liljeberg* requires a different result.  *Liljeberg* identified

three factors for determining whether a civil judgment should be vacated under Rule 60(b)(6)

due to extraordinary circumstances.  *See Liljeberg*, 486 U.S. at 858.  And in *Atwood*, the Seventh

Circuit used those factors to determine whether a statutory recusal error was harmless on appeal.

*Atwood*, 941 F.3d at 885.  The *Davis* standard for nonconstitutional errors requires more than a

showing of extraordinary circumstances or that a statutory error was not harmless.  It is a "well-

settled principle that to obtain collateral relief a prisoner must clear a significantly higher hurdle

than would exist on direct appeal."  *United States v. Frady*, 456 U.S. 152, 166 (1982).  Even if

the Court found that the error was not harmless under those factors, that would not suffice to

meet the *Davis* standard.  *See* Brian R. Means, Federal Habeas Manual § 1:38 (May 2022

Update) (noting that the *Davis* "standard is more onerous . . . than the harmless error test applied

to non-constitutional claims raised on direct appeal"); *United States v. Addonizio*, 442 U.S. 178,

184 (1979) ("It has, of course, long been settled law that an error that may justify reversal on

direct appeal will not necessarily support a collateral attack on a final judgment.").  "There is a

difference between reversing an error on appeal and correcting the error years later."  *Hawkins v.*

*United States*, 706 F.3d 820, 824 (7th Cir. 2013).

Pugh has not shown that any violation of § 455(a) was a fundamental defect resulting in a complete miscarriage of justice.  His § 455(a) claim, therefore, does not warrant relief under § 2255.

### D.  Ineffective Assistance of Counsel Claims

Pugh asserts that the FPD "provided him ineffective assistance of counsel" in violation of the Sixth Amendment in two ways.  *See* Counseled 2255 Mot. 23–24.  First, he argues that the FPD "was ineffective for failing to include claims [based on Judge Bruce's *ex parte* communications] in direct appeals once the full scope of the . . . communications was revealed." *Id.* at 24.  And second, he argues that the FPD was ineffective for failing to include him in a tolling agreement for actual bias claims and for failing to secure an agreement for appearance of bias claims.  *Id.*

With respect to the appeal claim, the Government argues that "[i]t is disingenuous to suggest, with the distorting effect of hindsight, that counsel should have appealed and alleged bias" because "[a]t the moment [Pugh] could have appealed, [he] had just received a below guideline sentence, he had waived his right to appeal, and the *ex parte* emails had not surfaced as yet."  Resp. 61.  The Court finds the last point persuasive.  Pugh's right to appeal expired in the fall of 2015, long before Judge Bruce's *ex parte* communications came to light.  His counsel could not have performed deficiently by failing to raise an argument based on facts of which she was unaware.

With respect to the tolling agreement claim, the Government points out that Pugh "has no right to counsel in a post-conviction setting, and nothing was stopping him from filing his own § 2255 motion at any time."  *Id.* at 62.  It makes many other arguments against this claim, but the Court finds it unnecessary to address them.  Pugh had no right to counsel beyond his direct

appeal.  *See Coleman v. Thompson*, 501 U.S. 722, 756 (1991) ("[A] criminal defendant has no right to counsel beyond his first appeal . . . ."); *cf. Garza v. Idaho*, 139 S. Ct. 738, 749 (2019) ("There is no right to counsel in postconviction proceedings . . . ." (citation omitted)).  Thus, any deficient performance with respect to securing postconviction tolling agreements does not create a Sixth Amendment violation.

### III.    Certificate of Appealability

When a district court enters a final order adverse to an applicant, it must issue or deny a certificate of appealability.  Rule 11(a), Rules Governing § 2255 Proceedings.  A court can grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Pugh has failed to make a substantial showing of the denial of a constitutional right, so the Court declines to issue a certificate of appealability.

### CONCLUSION

Accordingly, Defendant-Petitioner Wallace Pugh's *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, ECF No. 26, is MOOT.  His counseled Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255, ECF No. 30, is DENIED.  And his counseled motion for a status conference, ECF No. 34, is MOOT in light of this Order.  The Clerk is directed to enter judgment and close the accompanying civil case, 2:20-cv-02108-SLD.

Entered this 8th day of May, 2023.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE

20